Terence N. Hawley (SBN 179106)
Joshua D. Anderson (SBN 312836)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
T: 415.543.8700
thawley@reedsmith.com
janderson@reedsmith.com

Michael O'Neil (*Pro Hac Vice*)
Timothy Carwinski (*Pro Hac Vice*)
Bruce R. Van Baren (*Pro Hac Vice*)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL  60606
T: 312.207.1000
michael.oneil@reedsmith.com
tcarwinski@reedsmith.com
bvanbaren@reedsmith.com

*Attorneys for Defendant*
*TransUnion Interactive, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL SPORN, *on behalf of himself and all others similarly situated,*<br><br>                              Plaintiff,<br><br>        v.<br><br>TRANSUNION INTERACTIVE, INC.,<br><br>                              Defendant. | Case No. 18-cv-05424-YGR<br><br>**DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)**<br><br>**Date:   November 13, 2018**<br>**Time:   2:00 p.m.**<br>**Place:   Courtroom 1, 4th Floor**<br>**            Oakland Courthouse**<br>**            1301 Clay Street**<br>**            Oakland, California**<br>**Judge:  Hon. Yvonne Gonzalez Rogers** |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 13, 2018, at 2 p.m., in Courtroom 1 of the U.S. District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, 4th Floor, Oakland, California, 94612, or as soon thereafter as this matter may be heard, Defendant TransUnion Interactive, Inc. will move for an order, pursuant to the first-to-file rule and 28 U.S.C. § 1404(a), transferring the above-captioned case to the U.S. District Court for the Northern District of Illinois where the related case captioned *Sgouros v. TransUnion Interactive, Inc., et al.*, Case No. 1:14-cv-01850 is pending or, alternatively, staying the above-captioned case pending the outcome of the *Sgouros* case.  This motion to transfer venue is based on this notice of motion, TUI's memorandum of points and authorities and evidence cited therein, and any additional documents, evidence, or argument that TUI submits in advance of or at the hearing on this motion.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

1

**TABLE OF CONTENTS**

2

**Page**

3  I.  INTRODUCTION ..................................................................................................... 8

4  II.  BACKGROUND ....................................................................................................... 9

5       A.  *Sgouros v. TUI, et al.* ................................................................................... 9

6       B.  *Sporn v. TUI* ............................................................................................... 11

7  III.  ARGUMENT .......................................................................................................... 13

8       A.  This Court Should Transfer This Action to the U.S. District Court for the
9          Northern District of Illinois Pursuant to the First-to-File Rule................. 13

10           1.  *Sgouros* Was Filed Before *Sporn* ................................................... 14

11           2.  The Parties Are Substantially Similar ............................................. 14

12           3.  The Factual and Legal Issues Are Substantially Similar ............... 15

13           4.  *Sporn* Could Have Been Filed in the NDIL................................... 17

14           5.  None of the Exceptions to the First-to-File Rule Apply ............... 19

15           6.  Alternatively, this Court should stay *Sporn*. ................................. 20

16       B.  Transfer of this Action to the U.S. District Court for the Northern District
17          of Illinois Is Also Warranted Pursuant to 28 U.SC. § 1404(a). ................. 21

18           1.  Plaintiff's Choice of Forum ........................................................... 22

19           2.  Convenience of Parties and Witnesses .......................................... 23

20           3.  Interest of Justice ........................................................................... 24

21  IV.  CONCLUSION....................................................................................................... 25

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adoma v. Univ. of Phoenix, Inc.*,
5    711 F. Supp. 2d 1142 (E.D. Cal. 2010)...........................................................................14

6

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
7    946 F.2d 622 (9th Cir. 1991) .................................................................13, 15, 19, 20

8

*Argonaut Ins. Co. v. Mac Arthur Co.*,
   No. 12-3878, 2002 WL 145400 (N.D. Cal. Jan. 18, 2002)..........................................25

9

*Bakhtiar v. Information Resources, Inc.*,
10    No. 17-cv-04559-JST, 2018 WL 1014616 (N.D. Cal. Feb. 22, 2018) ..........................25

11

*In re Bozic*,
   888 F.3d 1048 (9th Cir. 2018) ...............................................................................14, 17

12

*Cadenasso v. Metro. Life Ins. Co.*,
13    No. 13-cv-05491-JST, 2014 WL 1510853 (N.D. Cal. Apr. 15, 2014) ....................15, 24

14

*Cardoza v. T-Mobile USA Inc.*,
15    No. 08-5120 SC, 2009 WL 723843 (N.D. Cal. Mar. 18, 2009).....................................24

16

*Cedars-Sinai Med. Ctr. v. Shalala*,
   125 F.3d 765 (9th Cir. 1997) .........................................................................................13

17

*Cent. W. Va. Energy Co., Inc. V. Mountain State Carbon, LLC*,
18    636 F.3d 101 (4th Cir. 2011) .........................................................................................19

19

*Church of Scientology of Cal. v. U.S. Dep't of the Army*,
20    611 F.2d 738 (9th Cir. 1979), *overruled on other grounds by Animal Legal
   Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)....................19

21

*In re Com21, Inc.*,
22    357 B.R. 802 (N.D. Cal. 2006) .....................................................................................21

23

*Cont'l Grain Co. v. Barge FBL-585*,
   364 U.S. 19 (1960)........................................................................................................24

24

*First Fin. Bank v. CS Assets, LLC*,
25    No. 08-0731-WS-M, 2009 WL 1211360 (S.D. Ala. May 4, 2009)................................22

26

*Fraser v. Brightstar Franchising LLC*,
27    No. 16-cv-01966-JSC, 2016 WL 4269869 (N.D. Cal. Aug. 15, 2016) ........................25

28

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)........................................................................................................18

*Granillo v. FCA U.S. LLC*,
   No. 15-02017-VAP (DTB), 2016 WL 8814351 (E.D. Cal. Jan. 11, 2016) ...................15

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010).....................................................................................................9, 19

*Hill v. Robert's Am. Gourmet Food, LLC*,
   No. 13-cv-00696-YGR, 2013 WL 3476801 (N.D. Cal. July 10, 2013)............................15, 16, 20

*Inherent.com v. Martindale-Hubbell*,
   420 F. Supp. 2d 1093 (N.D. Cal. 2006) .......................................................................16

*Interpret, LLC v. Crupnick*,
   No. 2:18-CV-03140-ODW (Ex), 2018 WL 3155118 (C.D. Cal. June 25, 2018)..........................19

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ................................................................................21, 22

*Koehler v. Pepperidge Farm, Inc.*,
   No. 13-cv-02644-YGR, 2013 WL 4806895 (N.D. Cal. Sept. 9, 2013) ...................15, 16, 17

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015) .......................................................................... *passim*

*Kutob v. L.A. Ins. Agency Franchising, LLC*,
   No. 2:18-cv-01505-APG-PAL, 2018 WL 4286171 (D. Nev. Sept. 7, 2018) ..................13, 17, 18

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) .......................................................................................22

*Madani v. Shell Oil Co.*,
   No. 07-4296, 2008 WL 268986 (N.D. Cal. Jan. 30, 2008)...........................................24

*Martin v. Global Tel*Link Corp.*,
   No. 15-cv-00449-YGR, 2015 WL 2124379 (N.D. Cal. May 6, 2015)................................. *passim*

*Mays v. Wal-Mart Stores, Inc.*,
   No. 17-CV-07174-LHK, 2018 WL 1400468 (N.D. Cal. Mar. 19, 2018) ....................22

*Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Educ.*,
   No. 2:11-cv-3471 KJM AC, 2018 WL 2716900 (E.D. Cal. June 6, 2018) .............21, 22, 25

*Pac. Am. Fish Co. v. Linkfresh, Inc.*,
   No. CV 17-6999-R, 2018 WL 376691 (C.D. Cal. Jan. 10, 2018) ................................18

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

*Pac. Coast Breaker, Inc. v. Connecticut Elec., Inc.*,
    No. 10-3134-KJM-EFB, 2011 WL 2073796 (E.D. Cal. May 24, 2011) .......................................14

*Papaleo v. Cingular Wireless Corp.*,
    No. C-07-1234 MMC, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) .............................16, 22, 24

*Peters v. Wells Fargo Bank, N.A.*,
    No. 17-cv-04367-JST, 2018 WL 398238 (N.D. Cal. Jan. 12, 2018) .......................................22

*Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*,
    No. 14-CV-3831 YGR, 2014 WL 5422631 (N.D. Cal. Oct. 24, 2014) .................................15, 21

*Schwartz v. Frito-Lay N. Am.*,
    No. C-12-02740 (EDL), 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012) ....................................17

*Selection Mgmt. Sys., Inc. v. Torus Specialty Ins. Co.*,
    No. 4:15-cv-05445-YGR, 2016 WL 304781 (N.D. Cal. Jan. 26, 2016) ................................13, 14

*State v. Bur. of Land Mgmt.*,
    Nos. 18-cv-00521-HSG, 18-cv-00524-HSG, 2018 WL 3439453 (N.D. Cal. July
    17, 2018) .......................................22

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ...................................17, 21

*Vu v. Ortho-McNeil Pharm., Inc.*,
    602 F. Supp. 2d 1151 (N.D. Cal. 2009) .......................................25

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
    967 F. Supp. 2d 1289 (N.D. Cal. 2013) ..............................14, 16, 20

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) .......................................22

*Zimmer v. Dometic Corp.*,
    No. 2:17-cv-06913 ODW (MRWx), 2018 WL 1135634 (C.D. Cal. Feb. 22, 2018)...............16, 17

**Statutes**

815 ILCS 505/1 *et seq.*......................................................10

15 U.S.C. § 1681g(f)(7)(A)...............................................8, 10, 12, 17

28 U.S.C. § 1332(d) ....................................................11, 18

28 U.S.C. § 1391(c)(2)......................................................19

28 U.S.C. § 1391(d)......................................................19

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

-6-

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

28 U.S.C. § 1391(e)(1)(A) ............................................................................................... 19

28 U.S.C. § 1391(e)(1)(B) ............................................................................................... 19

28 U.S.C. § 1404(a) ................................................................................................. *passim*

28 U.S.C. § 1453 .................................................................................................... 11, 18

28 U.S.C. § 1711-1715 .......................................................................................... 11, 18

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................................ 12

Cal. Bus. & Prof. Code § 17500 *et seq.* ........................................................................ 12

Cal. Civ. Code § 1750 *et seq.* ........................................................................................ 12

Ca. Civ. Code § 1785.15.2(a) ............................................................................ 8, 12, 17

**Rules**

Fed. R. Civ. Proc. 41 ...................................................................................................... 10

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Should this Court transfer this case to the U.S. District Court for the Northern District of Illinois where an earlier filed, related case captioned *Sgouros v. TransUnion Interactive, Inc.*, No. 1:14-cv-01850, is pending pursuant to the first-to-file Rule or 28 U.S.C. § 1404(a)?

2.      Alternatively, should this Court stay this case pending the resolution of the earlier filed, related case captioned *Sgouros v. TransUnion Interactive, Inc.*, No. 1:14-cv-01850, by the U.S. District Court for the Northern District of Illinois pursuant to the first-to-file Rule?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This Court should transfer this class action lawsuit to the U.S. District Court for the Northern District of Illinois ("NDIL") pursuant to the first-to-file rule and 28 U.S.C. § 1404(a).  *Sgouros v. TransUnion Interactive, Inc.*, No. 1:14-cv-01850 ("*Sgouros*"), has been pending in the NDIL since March 2014.[1]  *Sgouros* is based on factual allegations and legal claims that are substantially similar to those asserted here.  *Sgouros* was filed by the same counsel here, on behalf of a putative national class that includes Plaintiff Michael Sporn ("Plaintiff Sporn") and the members of the putative California class in this case.  It also includes the defendant in this case, TransUnion Interactive, Inc. ("TUI").

The claims in both this case and *Sgouros* are based on TUI's sale and marketing of a credit score product known as "VantageScore."  The plaintiffs in both cases allege that VantageScore is not useful to consumers in understanding how creditors view them because it uses a scoring model different from the one used to generate FICO scores, which supposedly are relied on by more lenders.  The provision of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.15.2(a) ("CCCRAA"), at issue in this case is virtually identical to the provision of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), at issue in *Sgouros*.  Both complaints

---

1 A copy of the operative Second Amended Class Action Complaint in *Sgouros* is attached as Exhibit A to the Declaration of Michael O'Neil, a copy of the Class Action Complaint in this action is attached as Exhibit B, and a chart showing the similarities between the operative pleadings in the two cases is attached as Exhibit C.

-8-

1  also rely upon the same online statements to assert violations of similar state consumer-protection

2  statutes based on TUI's allegedly unlawful sale and marketing of the VantageScore product.

3       This Court should transfer this action to the NDIL pursuant to the first-to-file rule to promote

4  comity between federal district courts, eliminate the risk of inconsistent rulings, and preserve

5  judicial and party resources.  A transfer is also warranted under 28 U.S.C. § 1404(a) for the

6  convenience of the parties and witnesses, and in furtherance of the interests of justice.  Transferring

7  this case to the NDIL will facilitate coordination of the two cases, including a possible assignment to

8  the Hon. John Z. Lee, who is presiding over *Sgouros* and is familiar with the factual allegations and

9  legal claims in both cases.  Alternatively, the Court should stay this case pending resolution of

10 *Sgouros*.

11      Moreover, Plaintiff Sporn's recently-filed motion to remand (ECF 17) in no way impacts the

12 propriety of a transfer.  In essence, Plaintiff Sporn contends that this Court lacks jurisdiction under

13 CAFA because a TUI employee in 2014 stated that TUI's "headquarters" was in California.

14 However, as TUI will more fully explain in its opposition to the motion to remand, for purposes of

15 diversity jurisdiction, the relevant question is the locus of the defendant's "nerve center," which is a

16 distinct legal issue and may or may not be in the same place as an entity's "headquarters."  *See Hertz*

17 *Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Here, there can be no genuine dispute based on the facts

18 and controlling law that TUI's "nerve center" is in Illinois – where Plaintiff Sporn's case could have

19 been brought and should now be transferred.  (*See* ECF 1, ¶ 6.)

20                        **II.    BACKGROUND**

21 **A.    *Sgouros v. TUI, et al.***

22      On March 14, 2014, Plaintiff Gary Sgouros ("Plaintiff Sgouros") filed suit in the NDIL

23 against TUI, TUI's parent company – Trans Union LLC, and Trans Union LLC's parent company –

24 TransUnion Intermediate Holdings, Inc. (f/k/a TransUnion Corp).  (*Sgouros*, ECF 1.)  By his class

25 action complaint, Plaintiff Sgouros alleged that he purchased a VantageScore from TUI on or about

26 June 10, 2013, based on TUI's representations that it was used by lenders in making credit decisions.

27 (*Sgouros*, ECF 1, ¶¶ 7, 13; Ex. A, ¶¶ 18, 19.)  After the Court denied the defendants' motion to

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

-9-

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   compel arbitration,[2] the defendants moved to dismiss the Amended Complaint, and the Court

2   dismissed several of Plaintiff Sgouros's claims.  (*Sgouros*, ECF 36, 63, 73.)

3        Plaintiff Sgouros filed the operative Second Amended Complaint on October 6, 2016.  (*See*

4   Ex. A.)  The Second Amended Complaint alleges that TUI's VantageScore product violated Section

5   1681g(f)(7)(A) of the FCRA, which purportedly requires credit reporting agencies to "supply the

6   consumer with a credit score that is derived from a credit scoring model that is widely distributed …

7   in connection with residential real property loans" or "assists the consumer in understanding the

8   credit scoring assessment of the credit behavior of the consumer and predictions about the future

9   credit behavior of the consumer."  (Ex. A, ¶ 88.)  Plaintiff Sgouros alleges that TUI violates this

10  provision because its VantageScore product is generated using a credit scoring model different from

11  that used by Fair Isaac Corporation ("FICO").  He alleges that TUI's VantageScore product is

12  "vastly inferior and of little value to consumers" because FICO scores are used "in over 90% of

13  United States lending decisions."  (Ex. A, ¶¶ 8, 89-90.)  Similarly, pointing to certain statements

14  allegedly made on-line, Plaintiff Sgouros also alleges that TUI violated the Missouri Merchandising

15  Practices Act, Mo. Rev. Stat 407.010 *et seq.* ("MMPA") by misrepresenting to consumers on its

16  website and elsewhere that the VantageScore product it sold "was the same credit score relied upon

17  by lenders" when "[i]n truth, the credit scores sold by [TUI] are not those used by the vast majority

18  of lenders."[3]  (Ex. A, ¶¶ 3, 8, 106-112.)

19       Plaintiff Sgouros seeks to represent a nationwide putative class of consumers who purchased

20  TUI's VantageScore product since March 14, 2011.  (Ex. A, ¶ 55.)  He also seeks to represent a class

21  of Missouri consumers who purchased TUI's VantageScore product since March 14, 2009.  (Ex. A,

22  ¶ 56.)

23

24       [2] This order was later affirmed by the Seventh Circuit.  (*See Sgouros*, ECF 62.)

25       [3] Plaintiff Sgouros voluntarily dismissed, pursuant to Rule 41 of the Federal Rules of Civil
26  Procedure, Count II of the Second Amended Complaint, which asserted claims under the Illinois
     Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*  (*See Sgouros*, ECF
     100.)
27

28                                    -10-

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

1    The parties in *Sgouros* are currently conducting fact discovery.  (Declaration of Michael

2    O'Neil, ¶ 5.)  The parties have completed several depositions, and Plaintiff Sgouros has indicated

3    that he intends to depose (or re-depose) at least seven persons, the majority of whom are located in

4    Chicago, Illinois.  (*Id.*)  The Court has not yet set deadlines for Plaintiff Sgouros to file his motion

5    for class certification or for the parties to file their respective dispositive motions.  (*Id.*)  The Court

6    also has not yet scheduled a trial date.  (*Id.*)

7    **B.    *Sporn v. TUI***

8        On July 17, 2018, the same counsel who represents Plaintiff Sgouros, Michael Reese of

9    Reese LLP, filed the instant putative class action against TUI on behalf of Plaintiff Michael Sporn in

10   San Francisco Superior Court.  (Ex. B.)  Like Plaintiff Sgouros, Plaintiff Sporn alleges that he

11   purchased the VantageScore product from TUI because he believed the credit score "was the same

12   one that lenders use in making the vast majority of consumer lending and credit decisions (*i.e.*, a

13   FICO score)."[4]  (Ex. B, ¶¶ 19, 20, 22; *see also* Ex. A, ¶¶ 18, 19, 27.)

14       On September 4, 2018, TUI timely and properly removed the case to this Court pursuant to

15   the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711–1715.

16   (*Sporn*, ECF 1.)  On October 3, 2018, Plaintiff Sporn filed a motion to remand.  (*Sporn*, ECF 17.)

17   Plaintiff Sporn's motion to remand lacks merit, and TUI will file an opposition to that motion

18   explaining why this Court has jurisdiction over this case under CAFA.

19       The claims in *Sporn* and *Sgouros* are based on nearly identical factual allegations regarding

20   TUI's VantageScore product.  Both operative pleadings accuse TUI of (a) "charging consumers for

21   credit scores (the 'TUI Consumer Credit Scores') . . . based on a vastly inferior and inaccurate credit

22   model that is essentially useless to consumers" and (b) "misleading consumers concerning the TUI

23   Consumer Credit scores" by "using a significantly different (and greatly inferior) credit scoring

24   system than the credit scoring system" used to generate the FICO scores.  (*Compare* Ex A, ¶ 1, *with*

25   Ex. B, ¶ 1.)

26

27       [4] Plaintiff Sporn purchased the product three times: on or about October 21, 2015, February 3, 2016, and February 22, 2016.  (Ex. B, ¶ 20.)

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

-11-

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Both operative pleadings allege that TUI misled consumers to believe that the VantageScore

2 credit scores "were accurate, reliable, and widely used" and were "the same credit score[s] relied

3 upon by lenders."  (*Compare* Ex. A, ¶¶ 2-3, *with* Ex. B, ¶ 2.)  As support, both pleadings incorporate

4 four of the same screen shots of the same four web pages that purportedly contain the same

5 misrepresentations about the credit scores.  (*Compare* Ex. A, ¶¶ 3-7, *with* Ex. B, ¶¶ 3-7.)  Both

6 pleadings also point to the exact same quotes about credit scores purportedly from TransUnion

7 Senior VP Julie Springer.  (*Compare* Ex. A, ¶ 9, *with* Ex. B, ¶ 14.)  Indeed, dozens of the paragraphs

8 of Plaintiff Sporn's complaint are copied verbatim (or include only slight variations) from the

9 Second Amended Complaint in *Sgouros*.  (*See* Ex. C (demonstrating the similarity of allegations in

10 the two operative pleadings).)

11    Plaintiff Sporn's claims and theories of liability are also very similar to those asserted in

12 *Sgouros*.[5]  For example, the CCCRAA provision that Plaintiff Sporn alleges TUI violated – Section

13 1785.15.2(a) – is virtually identical to Section 1681g(f)(7)(A) of the FCRA, which is at issue in

14 *Sgouros*.  (*Compare* Ex. A, ¶¶ 88-90, *with* Ex. B, ¶¶ 52-54.)  Likewise, Plaintiff Sporn's UCL, FAL,

15 and CLRA claims are substantially similar to Plaintiff Sgouros's MMPA claim – all of which allege

16 that TUI's misrepresentations to consumers during its sale and marketing of the VantageScore

17 product constitute "unlawful" and "unfair" business practices and/or false or deceptive advertising.

18 (*Compare* Ex. A, ¶¶ 108-110, *with* Ex. B, ¶¶ 68-69, 79, 93-101.)

19    Further, while Plaintiff Sporn seeks to represent a putative class of *only California residents*

20 who purchased the VantageScore product from July 17, 2014 to the present, Plaintiff Sgouros seeks

21 to represent a putative class of *all U.S. residents* who purchased the VantageScore product from

22 March 14, 2011 to the present.  (Ex. A, ¶ 55; Ex. B, ¶ 30.)  Accordingly, the alleged California-only

23 class in *Sporn* (including Plaintiff Sporn himself) would necessarily be included within by the

24 nationwide putative class alleged in *Sgouros* – the earlier-filed case.

25

26    [5] Plaintiff Sporn asserts claims against TUI for violations of (i) the CCCRAA; (ii) California's
Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (iii) California's False

27 Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"); and (iv) California's Consumer
Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("LRA").  (Ex. A, ¶¶ 46-104.)

28

-12-

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

### III.   ARGUMENT

**A.    This Court Should Transfer This Action to the U.S. District Court for the Northern District of Illinois Pursuant to the First-to-File Rule.**

This Court should transfer this case to the NDIL pursuant to the first-to-file rule.  *Sgouros* – a putative class action against TUI brought by the same attorneys, based on virtually the same factual allegations and substantially similar theories of liability, and seeking certification of a broader putative class that includes Plaintiff Sporn – has been pending there for over four years.  A transfer (or, alternatively, a stay) will promote efficiency by allowing coordination of both cases and avoid duplicative litigation and potentially conflicting rulings on similar issues.

The first-to-file rule is a "generally recognized doctrine of federal comity."  *Selection Mgmt. Sys., Inc. v. Torus Specialty Ins. Co.*, No. 4:15-cv-05445-YGR, 2016 WL 304781, at *2 (N.D. Cal. Jan. 26, 2016) (Rogers, J.) (quotation omitted).  It provides that "when cases involving the same parties and issues have been filed in two different districts, the second district court has the discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."  *Kutob v. L.A. Ins. Agency Franchising, LLC*, No. 2:18-cv-01505-APG-PAL, 2018 WL 4286171, at *1 (D. Nev. Sept. 7, 2018) (quoting *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).  The rule "is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments."  *Selection Mgmt. Sys., Inc.*, 2016 WL 304781, at *2 (citation omitted).  Therefore, this rule "should not be disregarded lightly."  (*Id.* (quotation and citation omitted).)

When deciding whether to apply the rule, "courts should be driven to maximize economy, consistency, and comity."  *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (quotation and citation omitted).  Accordingly, "a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues."  *Id.* (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).  If, after analyzing these three factors, the district court concludes that a transfer is appropriate, it has the discretion to transfer the later-filed case only to another "district or division where it might have been brought."  28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

-13-

U.S.C. § 1404(a); *see also In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018).  Here, this Court should transfer this case to the NDIL pursuant to the first-to-file rule because all applicable factors have been satisfied.

### 1.   *Sgouros* Was Filed Before *Sporn*

The first factor – the chronology of the actions – is met because this case was filed after *Sgouros* was filed in the NDIL.  *See Selection Mgmt. Sys, Inc.*, 2016 WL 304781, at *2 ("The first factor simply requires that the case in question was filed later in time." (citation omitted)).  Here, *Sgouros* was filed on March 14, 2014.  (*See supra* at 6.)  This action was filed on July 17, 2018 – more than four years after *Sgouros* was filed.  (*See supra* at 8.)

### 2.   The Parties Are Substantially Similar

The second factor – the similarity of the parties – is also met because the putative classes alleged in both cases overlap (indeed, Plaintiff Sporn is a member of the putative nationwide class in *Sgouros*), and TUI is a defendant in both cases.  "[T]he first-to-file rule requires only substantial similarity of parties."  *Kohn Law Grp, Inc.*, 787 F.3d at 1240 (collecting cases); *see also Pac. Coast Breaker, Inc. v. Connecticut Elec., Inc.*, No. 10-3134-KJM-EFB, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ("The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters."). "[P]roposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals."  *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013) (Rogers, J.) (citing *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (collecting cases)).

Here, the plaintiffs are substantially similar because Plaintiff Sporn is a member of the putative nationwide class alleged in *Sgouros*.  (*See supra* at 9.)  Further, the California-only putative class Plaintiff Sporn seeks to represent is subsumed by the nationwide putative class alleged in *Sgouros*.  (*See supra* at 9.)  Indeed, the putative class alleged in *Sgouros* is all consumers who purchased VantageScore credit scores from TUI since March 14, 2011, while the class alleged here is all consumers in California who purchased this same product from TUI since July 14, 2014.

-14-

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Therefore, the plaintiffs are substantially the same.  *See Koehler v. Pepperidge Farm, Inc.*, No. 13-cv-02644-YGR, 2013 WL 4806895, at *4 (N.D. Cal. Sept. 9, 2013) (Rogers, J.) (finding parties in earlier-filed class action alleging nationwide class of consumers who purchased a product were substantially similar to parties in later-filed class action alleging California-only class of consumers who purchased same product); *Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-cv-00696-YGR, 2013 WL 3476801, at *4 (N.D. Cal. July 10, 2013) (Rogers, J.) (same).

The parties are also substantially similar because TUI is a defendant in both cases.  *See Cadenasso v. Metro. Life Ins. Co.*, No. 13-cv-05491-JST, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (finding parties substantially similar where defendants were same but state-specific putative classes did not overlap); *accord Granillo v. FCA U.S. LLC*, No. 15-02017-VAP (DTB), 2016 WL 8814351, at *4 (E.D. Cal. Jan. 11, 2016).  As with the putative classes, the defendants need not be identical; some overlap is sufficient.  *See Kohn Law Grp.*, 787 F.3d at 1240 (rejecting argument "that the parties are not substantially similar" where a defendant in the earlier-filed action was not named in the later-filed action); *Alltrade*, 946 F.2d at 624, 624 n.3, 629 (same); *Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*, No. 14-CV-3831 YGR, 2014 WL 5422631, at *2-3 (N.D. Cal. Oct. 24, 2014) (Rogers, J.) (finding parties substantially similar despite absence of certain defendants from later-filed action and addition of new defendants to later-filed action).

Although Plaintiff Sporn did not also name TUI's parent companies as defendants, their alleged role in *Sgouros* was limited.  There, Plaintiff acknowledged that TUI actually sells the VantageScore product, but nevertheless sued its parent companies because he "believes" TransUnion Intermediate Holdings, Inc. provides the VantageScore product through TUI, and that Trans Union LLC assists them in doing so.  (Ex. A, ¶¶ 78, 81.).  Their absence from *Sporn* does not make the cases dissimilar.

### 3.    The Factual and Legal Issues Are Substantially Similar

The third factor – similarity of the issues – is met because both actions arise from the same factual allegations and are based on similar theories of liability regarding TUI's VantageScore product.  As with the parties, "[t]he issues in both cases also need not be identical, only substantially

-15-

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

similar." *Kohn Law Grp., Inc.*, 787 F.3d at 1240-41 (collecting cases). To make this determination, courts "look at whether there is 'substantial overlap' between the two suits." *Id.* at 1241 (citation omitted); *see also Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1099 (N.D. Cal. 2006) (noting cases were substantially similar despite asserting different claims because rulings in later-filed case "will be intimately intertwined with the factual and legal considerations" at issue in the earlier-filed case). Notably, the "similarity of the issues" factor "does not require total uniformity of claims but rather focuses on the ***underlying factual allegations***." *Zimmer v. Dometic Corp.*, No. 2:17-cv-06913 ODW (MRWx), 2018 WL 1135634, at *4 (C.D. Cal. Feb. 22, 2018) (citations omitted) (emphasis added).

The core factual allegations are the same in both *Sporn* and *Sgouros*. Both lawsuits allege that the scores provided by TUI do not satisfy the identical requirements of analogous federal and state statues because they are not scores used by a majority of lenders. The claims in both cases are also premised on TUI's sale and allegedly deceptive marketing of its VantageScore product – a product that Plaintiff Sporn and Plaintiff Sgouros both uniformly allege is based on different scoring model than that used by the majority of lenders and is therefore "essentially useless to consumers." (*Compare* Ex. A, ¶ 1, *with* Ex. B, ¶ 1); *see also Koehler*, 2013 WL 4806895, at *5 (finding similarity-of-issues factor met where both cases based on same marketing statements regarding same product); *Wallerstein*, 967 F. Supp. 2d at 1296-97 (same); *Hill*, 2013 WL 3476801, at *4-5 (same); *Papaleo v. Cingular Wireless Corp.*, No. C-07-1234 MMC, 2007 WL 1238713, at *1 (N.D. Cal. Apr. 26, 2007) (transferring later-filed case to court hearing earlier-filed case where both cases were "based on the imposition of the same $18 charge").

Further, the underlying factual allegations are virtually identical. For example, both complaints cite to the same text of the same webpages, and point to the same quotes from the same TransUnion LLC employee. (*See supra* at 9.) And both plaintiffs allege they purchased the VantageScore product because they believed it was the credit score used by the majority of lenders, but claim the score is "useless." (*See supra* at 8.) The "substantial similarity" requirement is easily

-16-

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  met here.  *See Kohn Law Grp., Inc.*, 787 F.3d at 1241 (finding substantially similar issues where

2  "[t]he question [the plaintiff] asks the [Court] to resolve is at the 'heart' of the [earlier filed action]").

3  The legal issues in the two suits are also substantially similar even though they are based on

4  different statutes.  Indeed, the introductory paragraphs of both complaints summarize the claims in

5  nearly identical language.  (*Compare* Ex. A, ¶ 1, *with* Ex. B, ¶ 1.)  Further, Plaintiff Sporn alleges a

6  violation of Section 1785.15.2 of the CCCRAA, which is virtually identical to FCRA Section

7  1681g(f)(7)(A), the provision at issue in *Sgouros*.  (*See supra* at 7, 9.)  Both statutes require

8  consumer reporting agencies to supply consumers "with a credit score that is derived from a credit

9  scoring model that is widely distributed to users by that consumer credit reporting agency" or "with

10  a credit score that assists the consumer in understanding" his or her credit.  15 U.S.C. §

11  1681g(f)(7)(a); CCCRAA § 1785.15.2(a).  Therefore, the legal issue presented in both cases is

12  necessarily the same: whether the TUI Vantage Score product complies with these requirements.

13  Moreover, the state law unfair competition and false advertising claims in both cases are all

14  based on similar legal theories that TUI's sale and marketing the VantageScore product was unfair

15  and deceptive.  (*See supra* at 7, 9.)  Accordingly, even though the claims are asserted under differing

16  state laws, they are substantially similar.  *See Zimmer*, 2018 WL 1135634, at *4 ("While this action

17  raises some unique state law claims …, the factual allegations giving rise to these claims and the

18  central theories of liability are identical to those in [the first-filed action].");  *Koehler*, 2013 WL

19  4806895, at *5 (finding two lawsuits to be substantially similar where both lawsuits arose from the

20  same allegedly misleading conduct, even though the lawsuits asserted claims under different state

21  laws); *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 (EDL), 2012 WL 8147135, at *3 (N.D. Cal.

22  Sept. 12, 2012) (same).

23  **4.  *Sporn* Could Have Been Filed in the NDIL**

24  The final requirement of the first-to-file rule – that the case could have been brought in the

25  NDIL – is also met.  *See In re Bozic*, 888 F.3d at 1054 (courts can transfer cases pursuant to the first-

26  to-file rule only to "any other district or division where it might have been brought") (quoting 28

27  U.S.C. § 1404(a) and citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *accord Kutob*, 2018

28                                            -17-

WL 4286171, at *3.  The transferee court meets this requirement if:  (1) it would have subject-matter jurisdiction; (2) defendants would be subject to personal jurisdiction; and (3) venue would be proper. *Martin v. Global Tel*Link Corp.*, No. 15-cv-00449-YGR, 2015 WL 2124379, at *3 (N.D. Cal. May 6, 2015) (Rogers, J.) (citation omitted).

The NDIL satisfies each of these three requirements.  First, the NDIL has subject-matter jurisdiction pursuant to CAFA.  (*See Sporn*, ECF 1, ¶¶ 4-8.)  Diversity exists because Plaintiff Sporn is a citizen of California, and TUI, the only defendant, is a citizen of Delaware and Illinois.  (*Id.*, ¶ 6.)  The alleged putative class exceeds 100 putative class members.  (*Id.*, ¶ 7.)  And, given the alleged number of class members and the relief sought, the amount in controversy exceeds CAFA's $5 million amount-in-controversy requirement.  (*Id.*, ¶ 8.)

Second, TUI is subject to personal jurisdiction in the NDIL because its "nerve center" is in Illinois.  (*See id.*, ¶ 6); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (general personal jurisdiction exists for a company in the state of its principal pace of business); *Hertz*, 559 U.S. at 92-93 (principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities," also referred to as its "nerve center").  TUI's three directors (*i.e.*, its President, its Executive Vice President – Chief Financial Officer, and its Executive Vice President and Assistant Secretary) primarily work and live in Illinois.  (*See* ECF 1, ¶ 6.)  Further, TUI's administrative functions, *i.e.*, accounting payroll, and human resources, are located in Illinois.  (*See id.*); *see also Pac. Am. Fish Co. v. Linkfresh, Inc.*, No. CV 17-6999-R, 2018 WL 376691, at *1 (C.D. Cal. Jan. 10, 2018) (principal place of business was where five of seven board members were located and "ma[de] strategic and operational decisions about Defendant's business" and where "Defendant's employment, accounting, and payroll activities are maintained and directed").  Moreover, TUI's 2018 filings with the Secretaries of State of California and Illinois identify an address in Illinois as its "principal executive office" and "principal address," respectively, and each of the five (5) officers and directors identified on the filings are listed as working at that same Illinois address.  (*See* ECF 1, ¶ 6.)

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Finally, venue is proper in the NDIL pursuant to 28 U.S.C. §§ 1391(c)(2), (d), and (e)(1)(A)

2    because TUI's "never center" is in Chicago.  (*See Sporn*, ECF 1, ¶ 6.)  In addition, pursuant to 28

3    U.S.C. § 1391(e)(1)(B), "a substantial part of the events or omissions giving rise to the claim"

4    allegedly occurred in the NDIL.  (*See* Ex. A, ¶¶ 15 ("[T]he misrepresentations and marketing at issue

5    here were created and/or approved in Illinois from Defendants' headquarters in Chicago."), 16

6    ("[T]he transaction between Plaintiff, other consumers, and Transunion took place in Illinois through

7    the internet.").  Notably, TUI did not contest that the NDIL had personal jurisdiction over it or that

8    venue was improper in *Sgouros*.  (*See generally Sgouros*.)

9    Although Plaintiff Sporn's motion for remand (ECF 17) challenges this Court's subject-

10   matter jurisdiction over this case, that challenge fails.  The sole basis for Plaintiff Sporn's motion to

11   remand is a statement in 2014, by a TUI employee that TUI's "headquarters" was in California.

12   (ECF 17 at 3, 5-8.)  However, a corporation's residence is determined based on the location of its

13   "nerve center," which is a distinct concept and may not be the same place as the corporation's

14   "headquarters."  *See Hertz*, 559 U.S. at 93 (headquarters and "nerve center" not always same); *see*

15   *also Cent. W. Va. Energy Co., Inc. V. Mountain State Carbon, LLC*, 636 F.3d 101, 105 (4th Cir.

16   2011) (principal place of business was in Michigan, where major corporate decisions were made,

17   even though headquarters was in West Virginia, where day-to-day operations took place).  Here, as

18   will be explained more fully in TUI's response to the motion to remand, the unchallenged facts set

19   forth in TUI's notice of removal demonstrate that TUI's "nerve center" clearly is in Illinois.

20   **5.**    **None of the Exceptions to the First-to-File Rule Apply**

21   The Ninth Circuit has held that the first-to-file rule "should not be disregarded lightly."

22   *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979),

23   *overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d

24   987 (9th Cir. 2016).  Courts, however, have made exceptions to the first-to-file rule where there was

25   evidence of "bad faith, … anticipatory suit, and forum shopping."  *Interpret, LLC v. Crupnick*, No.

26   2:18-CV-03140-ODW (Ex), 2018 WL3155118, at *3 (C.D. Cal. June 25, 2018) (quoting *Alltrade*,

27

28                                            -19-

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   *Inc.*, 946 F.2d at 628)).  Here, none of these exceptions apply as TUI did not file suit and therefore

2   could not have engaged in forum shopping or other bad faith conduct.

3        In sum, all factors applicable to the first-to-file determination favor a transfer of this case to

4   the NDIL, and a transfer would advance the purposes of the rule.  *See Hill*, 2013 WL 3476801, at *5

5   (transferring later-filed case pursuant to first-to-file rule where transfer would "serve the purpose of

6   the first-to-file rule in promoting judicial efficiency and avoiding the possibility of conflicting

7   judgments").  Allowing this action to run parallel in this Court to *Sgouros* would waste judicial and

8   party resources and risk "the embarrassment of conflicting judgments."  Conversely, significant

9   economies will be achieved by allowing the NDIL – which is already well familiar with the factual

10  allegations and claims asserted and has issued several discovery rulings – to manage both actions.

11  Moreover, *Sgouros* is still in the discovery stage, such that transfer of *Sporn* to the NDIL is unlikely

12  to significantly hinder the progress of either case.  To the contrary, if the case is transferred to the

13  NDIL, discovery efforts in both cases can be coordinated.  *See Wallerstein*, 967 F. Supp. 2d at 1297-

14  98 (transferring where later-filed action not likely to hinder progress of earlier-filed case and where

15  discovery in two actions could be "coordinated with ease").

16       **6.**     **Alternatively, this Court should stay *Sporn*.**

17       If this Court elects not to transfer this case to the NDIL, it should nevertheless stay *Sporn*

18  pending the resolution of *Sgouros*.  As noted, allowing the cases to be litigated simultaneously on

19  two separate fronts would effectively guarantee duplication of discovery efforts.  In addition, given

20  the procedural posture of *Sgouros*, there would be an obvious risk of conflicting rulings on the scope

21  of discovery, class certification, and the merits.  For example, if Judge Lee grants summary

22  judgment in favor of TUI because he rules that TUI's VantageScore product complies with the law,

23  that ruling would necessarily inform this Court's ruling on whether that product complies with

24  virtually the same requirements imposed by the CCRAA.  Similarly, a determination of whether

25  the alleged marketing at issue is deceptive or unfair under Missouri law could not be reconciled with

26  a contrary ruling under California law.  Accordingly, a stay pending the resolution of *Sgouros* is

27  proper.  *See Kohn Law Grp., Inc.*, 787 F.3d at 1239-41 (affirming district court order staying later-

28       -20-

filed case pursuant to first-to-file rule); *see also In re Com21, Inc.*, 357 B.R. 802, 810 (N.D. Cal. 2006) (staying, rather than transferring or dismissing case, pursuant to first-to-file rule).

**B.    Transfer of this Action to the U.S. District Court for the Northern District of Illinois Is Also Warranted Pursuant to 28 U.SC. § 1404(a).**

A transfer of this case to the NDIL is also warranted for the convenience of the parties and in the interests of justice pursuant to 28 U.S.C. § 1404(a).  *Compare Martin*, 2015 WL 2124379, at *6 (finding transfer appropriate under Section 1404(a) and, therefore, noting court did not have to also rule on arguments under first-to-file rule), *with Prime Healthcare Servs., Inc.*, 2014 WL 5422631, at *4 (finding transfer appropriate under first-to-file rule and, therefore, noting that the court need not also rule on arguments under Section 1404(a)).  A district court has broad discretion to transfer any civil action to "any other district or division where it might have been brought" pursuant to 28 U.S.C. § 1404(a) "for the convenience of the parties and witnesses" and "in the interest of justice." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  "The purpose of Section 1404(a) is 'to prevent waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Educ.*, No. 2:11-cv-3471 KJM AC, 2018 WL 2716900, at *2 (E.D. Cal. June 6, 2018) (quoting *Van Dusen*, 376 U.S. at 616).

Courts utilize a two-step analysis to determine if transfer is warranted:  "[t]he court first determines whether the case could have been brought in the transferee forum and then considers the convenience of the parties and witnesses and the interests of justice." *Id.* (citing 28 U.S.C. § 1404(a)).  Here, the first step of this analysis favors transfer because this case could have been brought in the NDIL.  (*See supra* at 17-19.)  In determining whether the second step is met, in the NDCAL,

> courts typically consider the following factors:  (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

-21-

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  *State v. Bur. of Land Mgmt.*, Nos. 18-cv-00521-HSG, 18-cv-00524-HSG, 2018 WL 3439453, at *2

2  (N.D. Cal. July 17, 2018) (collecting cases); *see also Jones*, 211 F.3d at 498-99 (listing similar

3  factors courts may consider when determining whether to transfer a case).  However, "[n]o single

4  factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a

5  case-by-case basis."  *Morgan Hill Concerned Parents Assoc.*, 2018 WL 2716900, at *2 (quotation

6  omitted).

7       **1.**     **Plaintiff's Choice of Forum**

8       Plaintiff's choice of forum in California state court should be afforded minimal weight.

9  While the plaintiff's choice of forum is typically entitled to significant weight under Section

10  1404(a), *see Peters v. Wells Fargo Bank, N.A.*, No. 17-cv-04367-JST, 2018 WL 398238, at *2-3

11  (N.D. Cal. Jan. 12, 2018), that is not the case where, as here,

12      (i)     the plaintiff sues on behalf of a putative class, *Martin*, 2015 WL 2124379, at *4

13             (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987));

14      (ii)    "the conduct giving rise to the claims occurred in a different forum" than where the
case was filed.  *Mays v. Wal-Mart Stores, Inc.*, No. 17-CV-07174-LHK, 2018 WL

15             1400468, at *3 (N.D. Cal. Mar. 19, 2018) (citing *Lou*, 834 F.2d at 739);

16      (iii)    there is a related case – based on similar facts and theories of liability – pending in
another court involving similar parties, *see Papaleo*, 2007 WL 1238713, at *1;

17  

18      (iv)    the chosen forum is the result of improper forum shopping, *Williams v. Bowman*, 157
F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); and

19  

20      (v)    the defendant removed the action from the plaintiff's chosen state-court venue to the
federal district court encompassing that state court, *see First Fin. Bank v. CS Assets,
LLC*, No. 08-0731-WS-M, 2009 WL 1211360, at *6 (S.D. Ala. May 4, 2009).

21  

22       Here, Plaintiff Sporn seeks to represent a putative class.  (*See generally* Ex. B.)  In addition,

23  Plaintiff Sgouros specifically alleged that the "misrepresentations and marketing at issue here were

24  created and/or approved of in Illinois from Defendants' headquarters in Chicago" and "the

25  transaction between Plaintiff, other consumers and Transunion took place in Illinois through the

26  internet." (Ex. A, ¶¶ 15-16.)  And while Plaintiff Sporn's complaint is conspicuously silent on

27  where TUI's alleged actions occurred, TUI's "nerve center" is in Chicago, Illinois. (*See Sporn*, ECF

28  

-22-

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1, ¶ 6.)  Further, the claims asserted here and in *Sgouros* are based on virtually identical factual

allegations, assert similar theories of liability and involve substantially similar parties.  (*See supra* at

14-17.)  Accordingly, the filing of *Sporn* by the same counsel from *Sgouros* smacks of forum

shopping and weighs in favor of a transfer.  Plaintiff Sporn's counsel originally elected to sue TUI in

the NDIL.  Counsel's apparent dissatisfaction with how *Sgouros* is progressing, or the Court's

discovery rulings in that case, does not permit counsel to get a second chance at discovery from TUI

in this Court.   Finally, as TUI removed this case, the NDCAL was not Plaintiff Sporn's chosen

venue.  Therefore, Plaintiff's chosen forum does not weigh against transferring this case to the

NDIL.

### 2.     Convenience of Parties and Witnesses

The convenience of the parties and witnesses will be served by a transfer to the NDIL.  As to

the parties, TUI has its "nerve center" in Chicago, Illinois so the NDIL will necessarily be more

convenient for it.  (*Sporn*, ECF 1, ¶ 6.)  In addition, the NDIL will be more convenient for TUI

because it is defending the related *Sgouros* action there.  *See Martin*, 2015 WL 2124379, at *4

(noting district was more convenient to defendant where it was defending related lawsuits).  Indeed,

the only connection to the NDCAL appears to be that Plaintiff Sporn – who is an absent class

member in *Sgouros* – resides here.  (Ex. B, ¶ 19.)  However, the NDIL does not present an

inconvenient forum for him as TUI can depose him in his home forum.

The location and convenience of witnesses – the most significant factor in this analysis – also

weighs in favor of transferring to the NDIL.  *See Martin*, 2015 WL 2124379, at *4.  Plaintiff Sporn

has specifically identified Julie Springer, the Chief Marketing Officer of non-party Trans Union

LLC, as a key witness in his pleading.  (Ex. B, ¶ 14.)  She is located in Chicago, IL.  (Declaration of

Michael O'Neil, ¶ 6); *see also Martin*, 2015 WL 2124379, at *4 (noting "convenience of non-party

witnesses is more important than the convenience of the parties").  Her deposition has not yet been

taken in *Sgouros* and, therefore, can be scheduled concurrently with her deposition in this case.

Further, of the five depositions that Plaintiff Sgouros has taken, three of the witnesses were

located in Chicago, Illinois, and none were located in the NDCAL.  (*Id.*, ¶ 6.)  The majority of the

-23-

1  additional witnesses that Plaintiff Sgouros has indicated he would like to depose are also located in

2  Chicago, Illinois.  (*Id.*, ¶ 5); *see also Papaleo*, 2007 WL 1238713, at *2 (transfer to court hearing

3  related case is more convenient for third-party witnesses "because such witness would not be

4  required to engage in duplicative litigation or travel to two different forums to attend court

5  proceedings") (citation omitted).  Therefore, the convenience of the parties and witnesses weighs

6  strongly in favor of transferring this case to the NDIL.

7         **3.     Interest of Justice**

8         The interests of justice strongly favor transferring this action to the NDIL because a

9  substantially similar case is pending there.  *See Cardoza v. T-Mobile USA Inc.*, No. 08-5120 SC,

10  2009 WL 723843, at *5 (N.D. Cal. Mar. 18, 2009) ("The feasibility of consolidation is a significant

11  factor in a transfer decision, and even the pendency of an action in another district is important

12  because of the positive effects it might have in possible consolidation of discovery and convenience

13  to witnesses and parties.").  Indeed, Section 1404(a) was designed to avoid the very situation

14  occasioned by the filing of this lawsuit. *See Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26

15  (1960) ("To permit a situation in which two cases involving precisely the same issues are

16  simultaneously pending in different District Courts leads to the wastefulness of time, energy and

17  money that § 1404(a) was designed to prevent.").

18         Once transferred, TUI will identify this case as related to *Sgouros* and it can be assigned to

19  Judge Lee pursuant to NDIL Local Rule 40.4 to allow for coordination with *Sgouros*.  Judge Lee is

20  familiar with the allegations and theories of liability and has issued a number of rulings on discovery

21  issues.  *See Madani v. Shell Oil Co.*, No. 07-4296, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008)

22  ("Judicial resources are conserved when an action is adjudicated by a court that has already

23  committed judicial resources to the contested issues and is familiar with the facts of the case.")

24  (quotations omitted).  This weighs strongly in favor of a transfer.  *See Martin*, 2015 WL 2124379, at

25  *5 (noting transfer would allow cases to be consolidated and/or related or at a minimum, discovery

26  can be coordinated and disputes resolved by same judge); *Cadenasso*, 2014 WL1510853, at *7-8, 11

27  (transferring case because based on court's operating procedures, "there is a high likelihood that the

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

court will assign the case to [the judge presiding over the earlier-filed action], even if the case is not *consolidated* with the ongoing case").

Further, in light of the overlapping factual and legal issues (*see supra* at 15-17), a transfer to the NDIL best mitigates the risk of inconsistent results presented by these two cases.  *See Argonaut Ins. Co. v. Mac Arthur Co.*, No. 12-3878, 2002 WL 145400, at *4 (N.D. Cal. Jan. 18, 2002) ("The best way to ensure [ ] consistency is to prevent related issues from being litigated in two separate venues.").  As noted, absent a transfer of this case to the NDIL, there is a risk that this Court and the NDIL could issue conflicting rulings on whether the plaintiffs have met the requirements under Rule 23 for class certification or whether TUI's VantageScore product complies with the law.

Other factors that courts in the NDCAL have considered similarly weigh in favor of a transfer to the NDIL.  As discussed, the bulk of the documents likely to be produced in this case is located in Chicago, Illinois.  (*See* Decl. of Michael O'Neil, ¶ 7.)  Also, the NDIL's interest in this case is stronger because that is where the underlying events allegedly took place.  (*See* Ex. A, ¶¶ 15-16); *see also Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009) (transferee district's interest was "stronger because the events at issue took place there").[6]

Therefore, the interests of justice weigh strongly in favor a transfer to the NDIL.  *See Morgan Hill Concerned Parents Assoc.*, 2018 WL 2716900, at *5 ("Because transfer serves judicial economy, avoids unnecessary duplication of effort and expenses among the parties and reduces the risk of inconsistent results, the interest of justice tips the analysis in favor of transfer.").

## IV.   CONCLUSION

For the foregoing reasons, TUI respectfully requests that this Court grant this motion and transfer this case to the NDIL pursuant to the first-to-file rule and 28 U.S.C. § 1404.

---

[6] The remaining two factors, *i.e.*, the NDIL's familiarity with California law and relative congestion compared to the NDCAL, are both neutral.  *See Bakhtiar v. Information Resources, Inc.*, No. 17-cv-04559-JST, 2018 WL 1014616, at *4 (N.D. Cal. Feb. 22, 2018) (comparing NDIL and NDCAL congestion); *Fraser v. Brightstar Franchising LLC*, No. 16-cv-01966-JSC, 2016 WL 4269869, at *7 (N.D. Cal. Aug. 15, 2016) (comparing NDIL and NDCAL familiarity with California law).

-25-

Dated: October 9, 2018

Respectfully submitted,

**REED SMITH LLP**

  _/s/ Terence N. Hawley_

Terence N. Hawley (SBN 179106)
Joshua D. Anderson (SBN 312836)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
T: 415.543.8700
thawley@reedsmith.com
janderson@reedsmith.com

-and-

Michael O'Neil (*Pro Hac Vice*)
Timothy Carwinski (*Pro Hac Vice*)
Bruce R. Van Baren (*Pro Hac Vice*)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL  60606
T: 312.207.1000
michael.oneil@reedsmith.com
tcarwinski@reedsmith.com
bvanbaren@reedsmith.com

*Attorneys for Defendant*
*TransUnion Interactive, Inc.*

DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE
ALTERNATIVE, STAY PURSUANT TO THE FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)