|   |   |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **NORTHERN DISTRICT OF CALIFORNIA** | |

| | |
|---|---|
| **MICHAEL SPORN,**<br>Plaintiff,<br>vs.<br>**TRANSUNION INTERACTIVE, INC.,**<br>Defendant. | CASE NO. 18-cv-05424-YGR<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO TRANSFER**<br>Re: Dkt. Nos. 17, 18 |

Plaintiff Michael Sporn brings this putative class-action lawsuit against defendant TransUnion Interactive, Inc. ("TUI") for alleged violations of the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code §§ 1785.1 *et seq.* (Count I); the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code §§ 17200 *et seq.* (Count II); the California False Advertising Law (FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq*. (Count III); and the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*. (Count IV). (Dkt. No. 17-2 ("Compl.") at 1.) Specifically, plaintiff alleges that TUI charged consumers for and misled consumers regarding "credit scores . . . that were not derived from a credit scoring model that is widely distributed to lenders but, instead, were based on a vastly inferior and inaccurate credit scoring model that is essentially useless to consumers." (*Id.* at 2.) TUI removed the case to this Court on September 4, 2018. (Dkt. No. 1 ("Removal").)

Now before the Court is Sporn's motion to remand (Dkt. No. 17 ("Remand")) and TUI's motion to transfer, or in the alternative, to stay the case (Dkt. No. 18 ("Transfer")).[1] Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **DENIES** plaintiff's motion to remand and **GRANTS** defendant's motion to transfer the case.

---

[1] The Court has reviewed the papers submitted by the parties in connection with plaintiff's motion to remand and TUI's motion to transfer. The Court has determined that the motions are appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

## I. BACKGROUND

On July 17, 2018, plaintiff filed this class-action lawsuit against TUI in the Superior Court of the State of California, San Francisco County, captioned *Sporn v. TransUnion Interactive, Inc.*, Case No. CGC-18-567168 (the "State Court Action"). Plaintiff's Class Action Complaint ("CAC") asserts class claims against TUI for alleged violations of the CCCRAA, the UCL, the FAL, and the CLRA. (Compl. at 1.) Plaintiff is a resident of San Francisco, California. (*Id.* at 12.) The CAC defines the putative class as: "All persons in the State of California who purchased TUI Consumer Credit Scores from TUI during the period from July 17, 2014 to [July 17, 2018]."[2] (*Id.* at 14.) On September 4, 2018, TUI filed its notice of removal pursuant to 28 U.S.C. Section 1441 based on original jurisdiction as provided by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (Removal ¶¶ 4-8.) One month later, on October 3, 2018, plaintiff filed a motion for remand citing a lack of diversity as the basis thereof. (Remand at 3.)

Plaintiff's counsel, Michael Reese, also represents a putative national class and a putative Missouri class in another case filed against TUI in the Northern District of Illinois in March 2014, *Sgouros v. TransUnion Interactive, Inc.*, Case No. 1:14-cv-01850 ("*Sgouros*"). (*See* Dkt. No. 18-2 ("Sgouros Compl.").) *Sgouros* relates to the same alleged wrongdoing as is at issue in this case, namely in both cases, plaintiffs allege that TUI's sale and marketing of a credit score product, known as "Vantage Score," used a credit scoring model that is different from that used by Fair Isaac Corporation ("FICO") and is therefore "vastly inferior an of little value to consumers" because FICO scores are used "in over 90% of United States lending decisions." (Sgouros Compl. ¶¶ 8, 89-90; Compl. ¶ 1; *see also* Dkt. No. 22 ("Transfer Opp.") at 5 ("Plaintiff does not dispute that *Sporn* and *Sgouros* both involve allegations that TUI deceptively marketed VantageScore credit scores . . . and that the VantageScore credit scoring model is not the same as the model that accounts for 90% of the market of credit scores sold to firms to use when making lending decisions[.]"). The putative national class in *Sgouros* includes plaintiff Sporn and the members of the putative California class in this action. (Sgouros Compl. ¶ 55 (alleging that plaintiff Sgouros

---

[2] The date of the filing of plaintiff's complaint. (*See* Compl. at 28.)

2

seeks to represent a nationwide putative class of consumers who purchase TUI's VantageScore product since March 14, 2011).)[3] Moreover, TUI has represented to the Court that it does not anticipate challenging the geographic scope of the proposed nationwide class in *Sgouros*. (*See* Dkt. No. 26 ("Suppl.") at 3.)

## II. MOTION TO REMAND

### A. Legal Standard

"Federal courts are of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The courts are presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Accordingly, there is a "strong presumption against removal jurisdiction" when evaluating a motion to remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The burden of establishing federal jurisdiction is upon the party seeking removal." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

### B. Analysis

Under CAFA, federal district courts have jurisdiction over class actions where the amount in controversy exceeds $5 million, there are more than 100 putative class members, and "any member of a class of plaintiffs is a citizen of a [s]tate different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiff avers that this lawsuit fails to meet the third requirement, diversity of citizenship. (Remand at 5.) Specifically, plaintiff asserts that TUI is not, as defendant represents in its notice of removal, a Delaware corporation with its principal place of business in Illinois but instead maintains its principal place of business in San Luis Obispo, California. (*Id.* at 5-6.)

For the purposes of establishing diversity jurisdiction, a corporation is a citizen of the state(s) where it is incorporated and where it has its principal place of business. 28 U.S.C. §

---

[3] *See also* Compl. ¶ 20 (alleging that plaintiff Sporn purchased VantageScore products from TUI on October 21, 2015, February 3, 2016, and February 22, 2016); *id.* ¶ 30 (noting that plaintiff Sporn seeks to represent a class of California consumers who purchased VantageScore products from TUI during the period July 17, 2014 to the present).

3

1332(c)(1). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Specifically, a corporation's principal place of business is its "nerve center" or the "actual center of direction, control, and coordination." *Id.* at 93. "When a plaintiff challenges a defendant's allegation of jurisdiction, both sides submit proof and the court determines by a preponderance of the evidence, meaning it is more likely than not, that the jurisdictional threshold has been satisfied." *James Dickey, Inc. v. Alterra Am. Ins. Co.*, No. 2:15-cv-00963-ODW-DTB, 2015 WL 4537732, at *2 (C.D. Cal. July 27, 2015) (citing *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015)).

In its notice of removal and supporting declaration, TUI averred that it is a Delaware corporation with its principal place of business in Illinois, and therefore a citizen of those two states. (Removal ¶ 6.) TUI explained that the company's three directors, including its President, Executive Vice President – Chief Financial Officer, and Executive Vice President – Assistant Secretary, all work and live primarily in Illinois and typically act by written consent signed in Illinois. (*Id.*) TUI also asserted that the company's administrative functions, including accounting, payroll, and human resources, are located in Illinois. (*Id.*) Moreover, TUI points to its 2018 filings with the secretaries of State of California and Illinois, which identify an address in Chicago, Illinois as its "principal executive office" and "principal address," respectively. (*Id.*)

In his motion for remand, plaintiff argues that TUI holds its principal place of business in California and is therefore a California corporation for the purposes of establishing diversity of citizenship under CAFA jurisdiction. (Remand at 5-7.) In support of that argument, plaintiff avers that in *Sgouros*, TUI filed a declaration in which a representative of the defendant stated that "TUI is a business corporation incorporated in Delaware with its headquarters in San Luis Obispo, California."[4] (*Id.* at 6.) Plaintiff also points to a service agreement attached to the aforementioned

---

[4] In response, TUI confirms that the statement in the *Sgouros* declaration indicating that TUI had its headquarters in San Luis Obispo, California "was consistent with TUI's business operations when made in 2014[.]" (Suppl. at 1.) Instead of trying to refute the 2014 declaration, TUI responded that the statement was "legally irrelevant to the issue of TUI's current principal place of business" because it "did not address the *current* locus of TUI's 'nerve center,' i.e., where

4

declaration which instructed parties to the agreement to "send any notices or other communications regarding our Site, your membership, products or services to Trans Union Interactive, Inc., 100 Cross Street, Suite 202, San Luis Obispo, CA 93401" and noted that "TrueCredit is a trademark of Trans Union Interactive, Inc., a Delaware corporation based in San Luis Obispo, California." (*Id.* at 6-7.) Plaintiff also relies on communications from TUI to consumers in which the only address provided for TUI is the San Luis Obispo office. (*Id.* at 7.)

Although a corporation's "nerve center," and therefore its principal place of business, "should normally be the place where the corporation maintains its headquarters," the analysis hinges on where the corporation maintains its "actual center of direction, control, and coordination . . . not simply an office where the corporation holds its board meetings[.]" *Hertz*, 559 U.S. at 93. Accordingly, it may be the case that a corporation's principal place of business for the purposes of determining corporate citizenship differs from the location characterized as the company's "headquarters." *See Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 173 (4th Cir. 2014) ("[T]here is nothing in *Hertz* to suggest that a company cannot refer to one office as its 'headquarters' while maintaining its 'nerve center' in another office.")

Here, all three of TUI's directors, (its President, Executive Vice President/Chief Financial officer, and Executive Vice President/Assistant Secretary) work and live primarily in Illinois and typically act by written consent signed in Illinois. *See* Dkt. No. 21 ("Remand Opp.") at 5; *see also Pac. Am. Fish Co. v. Linkfresh, Inc.*, No. CV 17-6999-R, 2018 WL 376691, at *1 (C.D. Cal. Mar. 30, 2016) (finding a principal place of business where five of seven directors resided and made "strategic and operational decisions about Defendant's business").[5] Additionally, the majority of

---

TUI's board of directors and high-level officers made key decisions about TUI's business." (*Id.* (emphasis supplied).)

[5] *See also Galarpe v. United Airlines, Inc.*, No. 17-CV-0614-EMC, 2018 WL 348161, at *2 (N.D. Cal. Jan. 10, 2018) (finding principal place of business was Illinois based on allegation that Illinois was where defendant's "high-level officers direct, control, and coordinate its activities"); *Peich v. Flatiron W., Inc.*, No. 16-cv-00540-ODW-DTB, 2016 WL 6634851, at *3 (C.D. Cal. Nov. 9, 2016) (finding principal place of business where defendant's CEO, COO, CFO, Treasurer, and General Counsel were located); *Stainbrook v. Target Corp.*, No. 116-cv-00091-ODW, 2016 WL 3248665, at *3 (C.D. Cal. June 8, 2016) (finding principal place of business where defendant's "top executives" were located); *Gonzalez v. Starwood Hotels*, No. CV 16-1068-GW (JEMx), 2016 WL 1611576, at *3 (C.D. Cal. Apr. 21, 2016) (finding principal place of

TUI's Senior Vice Presidents and Vice Presidents also work and live primarily in Illinois. (Remand Opp. at 5.)

Moreover, TUI operates several administrative functions, including accounting, finance, tax, payroll, and human resources, primarily from Illinois. Remand Opp. at 6; *see also Pac. Am. Fash Co.*, 2018 WL 376691, at *1 (finding a principal place of business where "Defendant's employment, accounting, and payroll activities are maintained and directed").[6] Finally, TUI's 2018 filings with the Secretaries of State in California and Illinois, which each identify an address in Illinois as TUI's "principal executive office" and "principal address," respectively, and list each of the five officers and directors identified in the filings as working at the same Illinois address provide additional evidence that Illinois is TUI's "nerve center."[7] Remand Opp. at 6; *see also Calderon v. Capital One, N.A.*, No. SACV 16-752-JLS (SSx), 2016 WL 10987328, at *2 (C.D. Cal. July 6, 2016) (noting "business entity details' from the California Secretary of State . . . confirm [that defendants] have their principal place of business in Virginia, not California").

For these reasons, Court finds that TUI's nerve center, and therefore its principal place of business for the purposes of determining jurisdiction, is Illinois.[8] Accordingly, the Court **DENIES** plaintiffs' motion to remand.

---

business where "large majority of the officers" worked and made decisions about defendant's business).

[6] *See also Peich*, 2016 WL 6634851, at *3 (finding a principal place of business where defendant's "executive officers administer the corporation's payroll, human resources, accounting financing, and legal functions"); *Barbosa v. Transport Drivers, Inc.*, No. ED CV 15-1834-DMB (DTBx), 2015 WL 9272828, at *3 (C.D. Cal. Dec. 18, 2015) (finding a principal place of business where al of defendant's "primary executive, administrative, financial, and management functions" are located).

[7] Although plaintiffs are correct that TUI's filings with the Secretaries of State of California and Illinois, without more, are not sufficient to establish a corporation's nerve center, (Dkt. No. 23 ("Remand Reply") at 9 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010)), here TUI has provided substantial additional evidence that its nerve center is, in fact, located in Illinois. (*See* Remand Opp. at 5-6.)

[8] Plaintiffs' argument that "any doubts about whether the Court has diversity jurisdiction should be resolved against finding jurisdiction" does not persuade as this is a CAFA action. The Supreme Court has made clear that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

### III. MOTION TO TRANSFER

#### A. Legal Standard

Defendant requests that the Court exercise its discretion to dismiss, stay, or transfer the case to another district under the first-to-file rule. *See Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997); *Alltrade Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary . . . ."). The first-to-file rule is "a generally recognized doctrine of federal comity" permitting a district court to decline jurisdiction over an action. *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D. Cal. 2006) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)). As such, the rule "should not be disregarded lightly." *See Microchip Tech., Inc. v. United Module Corp.*, No. 10-CV-04241, 2011 WL 2669627, at *3 (N.D. Cal. July 7, 2011). Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology of actions; (2) similarity of the parties; and (3) similarity of the issues. *Schwartz v. Frito-Lay N. Am.*, No. 12-CV-02740, 2012 WL 8147135, at *2 (N.D. Cal. Sept. 12, 2012) (citing *Alltrade*, 946 F.2d at 625). Additionally, a district court may only transfer an action pursuant to the first-to-file rule to a transferee district "where it might have been brought." *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (citing 28 U.S.C. § 1404(a)).

A court may, in its discretion, decline to apply the first-to-file rule in the interests of equity or where the Section 1404(a) balance of convenience factors weigh in favor of the later-filed action. *Adoma v. Univ. of Phoenix, Inc.*, 711 F.Supp.2d 1142, 1149 (E.D. Cal. 2010); *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). Exceptions to the first-to-file rule include where the filing of the first suit evidences bad faith, anticipatory suits, and forum shopping. *Alltrade*, 946 F.2d at 628. The Ninth Circuit has cautioned that relaxing the first-to-file rule on the basis of conveniences is a determination best left to the court in the first-to-file action. *Ward*, 158 F.R.D. at 648 (citing *Alltrade*, 946 F.2d at 628).

#### B. Analysis

##### 1. Chronology of Actions

Here, it is undisputed that *Sgouros* was filed in the Northern District of Illinois in March

2014, well before the instant action was filed on July 17, 2018. Accordingly, the first factor, chronology of the actions, is met. *See* Transfer Opp. at 5; s*ee also Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F.Supp.2d 1289, 1293 (N.D. Cal. 2013).

### 2. Similarity of the Parties

"[T]he first-to-file rule requires only substantial similarity of parties." *Kohn Law Grp, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (collecting cases). Courts within the Northern District of California have taken two approaches regarding the comparison of putative classes prior to class certification for the purposes of a motion to transfer under the first-to-file rule. For example, in *Lac Anh Le v. PricewaterhouseCoopers LLP*, the court denied defendant's motion to stay under the first-to-file rule without prejudice, holding that because the classes in the first and second-filed suits had not yet been certified, a comparison of the individual plaintiffs in each lawsuit was appropriate and showed that the parties were not the same. No. C-07-5476 MMC, 2008 WL 618938, at *1 (N.D. Cal. Mar. 4, 2008). Other Northern District courts, including this Court, have applied what appears to be the more widely accepted rule of comparing the putative classes even prior to certification. *Ruff v. Del Monte Corp.*, No. C 12-05251 JSW, 2013 WL 1435230, at *3 (N. D. Cal. Apr. 9, 2013) (finding substantial similarity among three putative class actions related to produce labeling).[9] Consequently, the Court is not persuaded by plaintiff's contention that "[s]ubstantial similarity of the parties is determined by comparing the proposed classes as they currently stand." (Transfer Opp. at 5 (internal citations omitted).)

Here, plaintiff Sporn is a member of the putative nationwide class in *Sgouros*. *See supra* at 2-3. Additionally, the California-only putative class that Sporn seeks to represent in this action is subsumed in the putative nationwide class in *Sgouros*. (*See id.*) Moreover, TUI has represented to the Court that it does not anticipate challenging the geographic scope of the proposed nationwide

---

[9] *See also Ross v. U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014, 1020 (N.D. Cal. 2008); *Weinstein v. Metlife, Inc.*, No. C 06-04444 SI, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006); *Hill v. Robert's Am. Gourmet Food, LLC*, No.13-cv-00696-YGR, 2013 WL 3476801, at *4 (N.D. Cal. July 10, 2013).

8

class in *Sgouros*. (*See* Suppl. at 3.) Therefore, the plaintiffs in the instant action and in *Sgouros* are substantially the same.

Moreover, TUI is a defendant in both cases.[10] *See Cadenasso v. Metro. Life Ins. Co.*, No. 13-cv-15491-JST, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (finding parties substantially similar where defendant were same but state-specific putative classes did not overlap). As with the putative classes, the defendants need not be identical, substantial overlap is sufficient. *See Kohn Law Grp.*, 787 F.3d at 1240 (rejecting argument "that the parties are not substantially similar" where a defendant in the earlier-filed action was not named in the later-filed action).[11] Accordingly, the second factor, the similarity of the parties, is also met.

### 3. Similarity of the Issues

As with the parties, "[t]he issues in both cases also need not be identical, only substantially similar." *Id.* at 1240-41 (collecting cases). The "similarity of the issues" factor "does not require total uniformity of claims but rather focuses on the underlying factual allegations." *Zimmer v. Domestic Corp.*, No. 17-cv-06913 ODW (MRWx), 2018 WL 1135634, at *4 (C.D. Cal. Feb. 22, 2018) (citations omitted) (emphasis supplied). Here, the claims in the instant action and *Sgouros* are based on nearly identical factual allegations regarding TUI's VantageScore product. Both operative pleadings accuse TUI of "charging consumers for credit scores . . . that were not derived from a credit scoring model that is widely distributed to lenders but, instead, were based on a vastly inferior and inaccurate credit scoring model that is essentially useless to consumers; . . .

---

[10] The Court is not persuaded by plaintiff's argument that the absence of TUI's parent companies as defendants in the instant action renders the parties dissimilar. The parent company defendants in *Sgouros* played a limited role. Plaintiff Sgouros acknowledged that TUI actually sells the VantageScore product, but nevertheless sued its parent companies because he "believes" TransUnion Intermediate Holdings, Inc. provides the VantageScore product through TUI, and that Trans Union LLC assists them in doing so. (*See* Sgouros Compl. ¶¶ 78, 81.)

[11] *See also Adoma v. University of Phoenix, Inc.*, 711 F.Supp.2d 1142, 1148 (E.D. Cal. 2010) (citing *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D. Cal. 2006)); *Schwartz v. Frito-Lay North America*, No. C-12-02740 (EDL), 2012 WL 8147135, * 3 (N.D. Cal. 2012) ("The issues need not be precisely identical for the first-to-file rule to apply; the rule can apply even if the later-filed action brings additional claims."); *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F.Supp.2d 949, 959 (N.D. Cal. 2008) ("[A]s defendant correctly notes, the 'first-to-file' rule is satisfied by a *sufficient* similarity of issues.").

9

misleading consumers concerning [those credit scores] by using a significantly different (and greatly inferior) credit scoring system than the credit scoring system used to generate the credit scores that lenders use in making the vast majority of consumer lending and credit decisions . . . [; and] misle[ading] consumers to believe that [those credit scores] were accurate, reliable, and widely used and were the same credit scores relied upon by lenders in making the vast majority of consumer lending and credit decisions." (Compl. ¶ 1; *see also* Sgouros Compl. ¶ 1 (stating nearly identical substantive allegations).) "Plaintiff does not dispute that [the instant action] and *Sgouros* both involve allegations that TUI deceptively marketed VantageScore credit scores . . . and that the VantageScore credit scoring model is not the same as the model that accounts for 90% of the market of credit scores sold to firms to use when making lending decisions[.]" (Transfer Opp. at 5.) Plaintiff concedes that "there is factual overlap between the cases[.]" (*Id.* at 5.)

Moreover, plaintiff Sporn alleges a violation of the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.1, which is effectively identical to Section 1681g(f)(7)(A) of the Fair Credit Reporting Act, the provision at issue in *Sgouros*. (Compl. ¶¶ 46-61; Sgouros Compl. ¶¶ 66-97.) Both statutes require consumer reporting agencies to supply consumers "with a credit score that is derived from a credit scoring model that is widely distributed to users by that consumer credit reporting agency" or "with a credit score that assists the consumer in understanding" his or her credit. 15 U.S.C. § 1681g(f)(7)(a); CCCRAA § 1785.15.2(a). Additionally, the state law unfair competition and false advertising claims in both cases are based on similar legal theories that TUI's sale and marketing of the VantageScore product was unfair and deceptive. (*Compare* Compl. ¶¶ 70, 81, 96 *with* Sgouros Compl. ¶¶ 105, 110.) Accordingly, although the claims in the instant action and *Sgouros* are based on different statutes, the factual basis thereof and the legal issues presented therein are substantially the same. *See Zimmer*, 2018 WL 1135634, at *4 ("While this action raises some unique state law claims . . . , the factual allegations giving rise to these claims and the central theories of liability are identical to those in the first-filed action].").

### 4. Ability to File Case in Transferee District

A district court may only transfer an action pursuant to the first-to-file rule to a transferee

district "where it might have been brought." *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (citing 28 U.S.C. § 1404(a)). The transferee court meets this requirement if: (1) it would have subject-matter jurisdiction; (2) defendants would be subject to personal jurisdiction; and (3) venue would be proper. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

Here, TUI moves to transfer this case to the U.S. District Court for the Northern District of Illinois ("NDIL"). (Transfer at 8.) First, for the reasons discussed herein, NDIL has subject-matter jurisdiction pursuant to CAFA. *See supra*, II.b. Second, and also for the reasons discussed herein, TUI is subject to personal jurisdiction in the NDIL because its "nerve center" is in Illinois. *See id.* Similarly, venue is proper in NDIL pursuant to 28 U.S.C. Sections 1391(c0(2), (d), and (e)(1)(A) because TUI's "nerve center" is in Illinois. *See id.* Accordingly, this case may have been brought in NDIL.

For these reasons, Court finds that the first-to-file rule applies.[12] Accordingly, the Court **GRANTS** defendant's motion to transfer.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** plaintiff's motion to remand and **GRANTS** defendant's motion to transfer.

This Order terminates Docket Numbers 17 and 18.

**IT IS SO ORDERED.**

Dated: January 10, 2019

                                                **YVONNE GONZALEZ ROGERS**
                                        **UNITED STATES DISTRICT COURT JUDGE**

---

[12] The Court need not reach plaintiff's convenience argument (Transfer Opp. at 8) in light of the Court's ruling on the other issues and its heavy reliance on arguments that the Court has rejected.